UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| HAROLD NEELEY, individually and on behalf of the Estate of Dessie Neeley, ) ) ) | |
| ) | Civil No: 15-54-GFVT |
| Plaintiff, ) ) | |
| V. ) ) | |
| ) | **MEMORANDUM OPINION** |
| WOLTERS KLUWER HEALTH, INC., et ) | **&** |
| al., ) | **ORDER** |
| ) | |
| Defendants. ) ) | |

\*\*\*     \*\*\*     \*\*\*     \*\*\*

This lawsuit is one of many cases throughout the country concerning plaintiffs who were harmed by a generic version of the prescription drug metoclopramide and who now seek relief from the manufacturers of brand-name Reglan® for their injuries. This case was initially litigated in the Eastern District of Missouri but was transferred this Spring to the Eastern District of Kentucky. Plaintiff Harold Neeley, individually and on behalf of his deceased wife, asks the Court to reconsider a prior Eastern District of Missouri summary judgment decision and to certify questions about brand-name manufacturers' liability for generic pharmaceuticals to the Supreme Court of Kentucky. For the following reasons, the Court will DENY Plaintiff's request.

**I**

Reglan® is a brand-name, prescription version of the generic drug metoclopramide, which is used to treat gastroesophageal reflux disease. One of the risks associated with taking Reglan®/metoclopramide is tardive dyskinesia, a movement disorder. While the risk of acquiring

tardive dyskinesia is low when ingesting the medicine for twelve weeks or less, the risk substantially increases for patients who consume the drug for periods of time longer than twelve weeks. *Metoclopramide*, PUBMED HEALTH, U.S. NATIONAL LIBRARY OF MEDICINE (Oct. 1, 2015), http://www.ncbi.nlm.nih.gov/pubmedhealth/PMHT0011180/?report=details. Plaintiff Dessie Neeley, now deceased, was prescribed this drug in 1987 and ingested particularly high doses of generic metoclopramide from December 2006 through February 2008. [R. 265-1 at 5.] After this long-term use, Mrs. Neeley began experiencing abnormal movements and tremors, including involuntary lip smacking, grimacing, and tongue protrusion. She was ultimately diagnosed with tardive dyskinesia caused by her use of Reglan®/metoclopramide.

Mrs. Neeley—like thousands of other plaintiffs across the country[1]— filed suit against various generic and brand-name companies responsible for manufacturing Reglan®/metoclopramide. Plaintiffs like Mr. and the late Mrs. Neeley argue that the brand-name manufacturers mislabeled (allegedly, intentionally) Reglan® and failed to adequately explain the drug's risk of tardive dyskinesia. Reglan® manufacturers, according to the Plaintiff, "failed to use reasonable care to modify the package insert to adequately warn physicians about the true risks of both short-term and long-term use." [R. 265-1 at 5.] The Food and Drug Administration ("FDA") requires generic drugs to be labelled identically to the brand-name version. The brand-name manufacturers' failure to amend their labels and warnings, then, resulted in inadequate labeling for all generic versions of Reglan® as well, which in turn arguably led doctors nationwide to misprescribe the drug.

---

[1] *See* AM. L. PROD. LIAB. 3d § 89:114 (Nov. 2015) summarizing nationwide Reglan®/metoclopramide litigation.

The procedural history of this case is lengthy. Mrs. Neeley originally filed suit in Missouri Circuit Court in February 2010. She named as defendants three groups of manufacturing companies, including the group of defendants referred to by the parties and herein as the "Brand Defendants."[2] [R. 265-1 at 5.] The defendants then removed her case to the Eastern District of Missouri. [*Id.*; R. 1.] Extensive discovery and briefing of dispositive motions ensued, and Judge John A. Ross of the Eastern District of Missouri granted summary judgment for the Brand Defendants against the Plaintiffs in July 2013. [R. 211.] At some point during the pendency of the action, Mrs. Neeley passed away. Mr. Harold Neeley, in his individual capacity and as executor and representative of his wife's estate, continued on with the case. [*See* R. 237.]

Judge Ross's July 2013 order granted summary judgment for the Brand Defendants but denied a motion to dismiss filed by various other defendants. [R. 211.] Subsequently, certain defendants affected by the motion to dismiss ruling moved the Missouri court for reconsideration. [R. 238.] Further briefing ensued, and, also during this time period, the United States Supreme Court issued a decision affecting the Missouri court's jurisdiction over some of the parties. *See Daimler v. Bauman*, 134 S. Ct. 746 (2014); [R. 238; R. 239.] In short, Judge Ross resolved the motion for reconsideration by granting it in part and by transferring the entire action to this Court in the Eastern District of Kentucky. [R. 247; R. 248.]

---

[2] The title "Brand Defendants" is given to Defendants Wyeth, LLC (f/k/a Wyeth, Inc.); Wyeth Pharmaceuticals, Inc.; and Schwartz Pharma, Inc. n/k/a UCB, Inc., by the parties and the Court for the purposes of this opinion. The two other groups of defendants are not involved with the motion that is currently before the Court for consideration, but the Brand Defendants oppose the Plaintiff's motion for reconsideration and certification.

Following the lawsuit's transfer, Plaintiff Harold Neeley filed a motion asking the Court to reconsider Judge Ross's decision to grant summary judgment to the Brand Defendants. Neeley also asks the Court to certify the following questions to the Kentucky Supreme Court:

1. Whether the Kentucky Products Liability Act precludes common law claims against non-manufacturing, non-selling defendants in a case involving injuries caused by a product?

2. Whether under Kentucky law, a brand-name drug company owes a duty to a consumer who ingested a generic drug distributed and manufactured by a different company if the brand-name drug company is responsible for the labeling and warnings of the drug—brand-name or generic—and a pharmacist lawfully substituted a generic drug for the consumer's prescription?

[R. 265.]

As support for his motion for reconsideration, Neeley directs the Court to consider how a factually similar lawsuit was resolved over the course of the last several years in Alabama. In August 2011, Judge Mark E. Fuller of the Middle District of Alabama was confronted with a Reglan® lawsuit nearly identical to the one before this Court. *See Weeks v. Wyeth, Inc., et. al*, No. 1:10-cv-602-MEF, 2011 WL 6988047, at *1 (M.D. Al. Aug. 25, 2011). In *Weeks*, the plaintiffs sued five current and former drug manufacturers for the injuries that Mr. Weeks allegedly suffered because of his prolonged use of metoclopramide. The plaintiffs conceded that Weeks did not ingest any actual Reglan®, but they sought to sue the brand-name manufacturers nonetheless on fraud, misrepresentation, and other similar theories. *Id.* Rather than interpreting Alabama state law himself, Judge Fuller certified the question to the Alabama Supreme Court. *Id.* at *2. The Alabama Supreme Court considered the question in August 2014, and found— contrary to popular prediction and the majority rule of courts considering the same issues—that the plaintiffs could, indeed, sue the brand-name manufacturers for Weeks' injuries, even though

4

Weeks never personally ingested any brand-name Reglan®. *Wyeth, Inc. v. Weeks*, 159 So.3d 649 (Ala. 2014).

Neeley concedes that Kentucky law has not changed since the Eastern District of Missouri entered its summary judgment order [*see* R. 265-1 at 7], but he urges the Court to reconsider in light of the Alabama developments and to prioritize allowing the Kentucky Supreme Court to address the issues. The Brand Defendants assert that certification is unnecessary, as the Sixth Circuit has twice considered Kentucky products liability law in a substantially identical context. The Brand Defendants also describe the Plaintiffs' request as untimely and procedurally flawed. The motion for reconsideration is now ripe for review and the Court considers the parties' briefing, both the Eastern District of Missouri and the Eastern District of Kentucky docket records, relevant statutes, procedural rules, and case law.

## II

### A

Federal Rule of Civil Procedure 60(b) allows a court to reconsider a prior final judgment, order, or proceeding in certain proscribed circumstances, such as mistake, excusable neglect, newly discovered evidence, or fraud. The statute includes a catch-all category, allowing reconsideration for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). Though granting reconsideration pursuant to Rule 60(b) is a matter within the court's discretion, allowing reconsideration is an exception rather than common practice. A court's power is limited by public policy favoring the finality of judgments. *See Blue Diamond Coal Co. v. Trs. Of the UMWA Combined Benefit Fund*, 249 F.3d 519, 524 (6th Cir. 2001). The Sixth Circuit has found this "especially true in an application of subsection (6) of Rule 60(b)." *Id.* Indeed, Rule 60(b)(6) requires a movant to demonstrate "exceptional and extraordinary circumstances, which are

defined as those unusual and extreme situations where principles of equity mandate relief." *Guy v. Lexington-Fayette Urban County Government*, ___ Fed. App'x ___ (6th Cir. 2015), Nos. 14-5496, 14-5501, 2015 WL 4940365 *1, at *6 (6th Cir. Aug. 20, 2015) (citing *Exp.-Imp. Bank of U.S. v. Advanced Polymer Sciences, Inc.*, 604 F.3d 242, 247 (6th Cir. 2010)).

**B**

Under the *Erie* doctrine, a federal court sitting in diversity applies the substantive law of the state in which it sits. *Hayes v. Equitable Energy Resources Co.*, 266 F.3d 560, 566 (6th Cir. 2001) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). *See also Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) (holding that a federal court sitting in diversity is bound to follow the law of the forum state). When faced with a question of Kentucky law, federal courts are bound by the decisions of the Kentucky Supreme Court. *See In re Darvocet*, 756 F.3d 917, 937 (6th Cir. 2014) (citing *Bradley v. Gen. Motors Corp.*, 512 F.2d 602, 604-05 (6th Cir. 1975)). Where the Kentucky Supreme Court has not yet ruled, federal courts "predict how the court would rule by looking to all available data, including decisions of the states' appellate courts." *Id.* (quoting *Allstate Ins. Co., v. Thrifty Rent-A-Car Sys., Inc.*, 249 F.3d 450, 454 (6th Cir. 2001)).

A mechanism exists to prevent a federal court from having to make a so-called "*Erie* guess" where a particularly unclear area of Kentucky state law would be outcome determinative. Kentucky Rule of Civil Procedure 76.37(1) allows courts, including this one, to certify questions of Kentucky law to the Kentucky Supreme Court where that question may be determinative of the action and where no controlling precedent exists. The rule reads:

> If there are involved in any proceeding before . . . any District Court of the United States . . . questions of law of this state which may be determinative of the cause then pending before the originating court and as to which it appears to the party or

>the originating court that there is no controlling precedent in the decisions of the Supreme Court and the Court of Appeals of this state, the Kentucky Supreme Court may answer those questions of law when certified to it by the originating court, or after judgment in the District Court upon petition of any party to the proceeding."

Ky. R. Civ. P. 76.37(1).

Certification is a useful tool that promotes judicial efficiency and is "most appropriate when the question is new and state law is unsettled." *Transamerica Ins. Co. v. Duro Bag Mfg. Co.*, 50 F.3d 370, 372 (6th Cir. 1995) (citing *Lehman Bros. v. Schein*, 416 U.S. 386, 390-91 (1974)). Certification should not be used, however, every time the state law is somewhat unclear. As the Sixth Circuit has stated, "the federal courts generally 'will not trouble our sister state courts every time an arguably unsettled question of state law comes across our desks. When we see a reasonably clear and principled course, we will seek to follow it ourselves.'" *State Auto Prop. & Cas. Ins. Co. v. Hargis*, 785 F.3d 189, 194 (6th Cir. 2015) (quoting *Pennington v. State Farm Mut. Auto. Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009)).

Further, the Sixth Circuit has made clear that certification should not be used simply as a means to procure a more favorable judgment after an unfavorable one has been imposed. Certification is "disfavored when it is sought only after the district court has entered an adverse judgment." *Id.* The appropriate time for a party to request certification is "before, not after, the district court has resolved the issue." *Id.* A party may not, so to speak, use the certification procedure to take two bites from the same apple.

**C**

The Court has been asked to reconsider the Eastern District of Missouri's order granting summary judgment to the Brand Defendants and to certify the above-stated two questions of law to the Kentucky Supreme Court. As an initial matter, the Court is hesitant to grant the Plaintiff's

motion because of the procedural posture of the case. This lawsuit was pending for roughly four years in the Eastern District of Missouri before it was transferred to Kentucky.[3] Certification to the Kentucky Supreme Court was not requested until after the case was transferred—and after the Plaintiff received an unfavorable ruling on the Brand Defendants' summary judgment motion.

As previously stated, the Sixth Circuit has explained that certification should not be used to avoid an adverse judgment and that a request for certification is best made early on while the case is before the district court. *Hargis*, 785 F.3d at 194. This Court is a district court rather than a court of appeals; however, due to the nature of the case and its transfer, the Court is in roughly the same procedural position that the Sixth Circuit Court of Appeals described in *Hargis*. The Plaintiff's case has already made its way through one district court, and the Plaintiff now seeks certification after an adverse judgment has been entered. Both the Sixth Circuit and other Courts of Appeals are reluctant to grant certification under these circumstances. *See id.*; *City of Columbus, Ohio v. Hotels.com, L.P.*, 693 F.3d 642, 654 (6th Cir. 2012). *See also Thompson v. Paul*, 547 F.3d 1055, 1065 (9th Cir. 2008) ("There is a presumption against certifying a question to a state supreme court after the federal district court has issued a decision."); *Enfield v. A.B. Chance Co.*, 228 F.3d 1245, 1255 (10th Cir. 2000) (denying certification where party did not seek it until after an adverse decision and stating "[t]hat fact alone persuades us that certification is inappropriate"); *Perkins v. Clark Equip. Co., Melrose Div.*, 823 F.2d 207, 209-10 (8th Cir. 1987) (explaining that requests for certification made after a summary judgment determination are disfavored because "[o]therwise, the initial federal court

---

[3] The action was removed to federal court in Missouri on February 22, 2011. [R. 1.] It was transferred to the Eastern District of Kentucky on March 30, 2015. [R. 248.]

8

decision would be nothing but a gamble with certification sought only after an adverse decision.").

To the extent that Neeley argues the legal landscape has changed since Judge Ross's ruling such that it was reasonable to wait until now to request certification [*see* R. 273, the Court remains unpersuaded.  The Sixth Circuit has twice considered the same issues presented by Neeley and both times has found Kentucky law to be well-settled.

The first relevant case, *Smith v. Wyeth, Inc.*, was before the Sixth Circuit Court of Appeals in 2011.  657 F.3d 420 (6th Cir. 2011).  In that case, the plaintiffs filed actions against various manufacturers of generic metoclopramide and also named Reglan® producers Wyeth, Inc., and Schwarz Pharma, Inc., as defendants, suing them for fraud and tortious misrepresentation.  *Id.* at 422.  The court found that the plaintiffs could not succeed against the Reglan® defendants under the Kentucky Products Liability Act, Ky. Rev. Stat. §§ 411.300-411.350.  *Id.* at 423-24.  In doing so, the Sixth Circuit joined "the majority of courts to address this question, [and rejected] the argument that a name-brand drug manufacturer owes a duty of care to individuals who have never taken the drug actually manufactured by that company." *Id.* at 424.  Eastern District of Missouri Judge Ross relied in part on *Smith* in his summary judgment decision for the Brand Defendants.  [R. 211 at 39-40.]

Neeley argues that "subsequent developments in the law and in Reglan cases now warrant[] reconsideration and certification."  [R. 265-1 at 1.]  Neeley concedes, however, that Kentucky law has not changed since *Smith* was decided or since the Eastern District of Missouri entered its order.  At times, Neeley mentions the changes in the country's legal landscape stemming from the United States Supreme Court's key decision, *PLIVA, Inc. v. Mensing*.  131 S. Ct. 2567 (2011).  However, *Mensing* is not a basis for reconsideration because both the *Smith*

9

decision and the Missouri summary judgment order discussed and applied the Supreme Court's holding.  *See Smith*, 657 F.3d at 423; [R. 211 at, *e.g.*, 3-4.]  The only "subsequent development" which Neeley can rely on, then, is the *Weeks* decision, where a similar question was certified to the Alabama Supreme Court.  *See Weeks*, 2011 WL 6988047; *Wyeth*, 159 So.3d 649.  This development does not strike the Court as an exceptional and extraordinary circumstance mandating reconsideration under Federal Rule of Civil Procedure 60(b)(6).  *See Guy*, 2015 WL 4940365, at 6; *Exp.-Imp. Bank of U.S.*, 604 F.3d at 247.  Further, the Sixth Circuit has already suggested that the *Weeks* certification to the Alabama Supreme Court does not now necessitate certification in every metoclopramide/Reglan® case.  *In re Darvocet*, 756 F.3d at 938-39.

   *In re Darvocet* is the second relevant Sixth Circuit case addressing questions the Plaintiff seeks to certify.  That case began as a multidistrict litigation action before Judge Danny C. Reeves in the Eastern District of Kentucky.  The action consolidated sixty-eight claims against both generic and brand-name manufacturers of the drug propoxyphene, or brand-name Darvocet.  *Id.* at 922.  Though *In re Darvocet* is not a metoclopramide/Reglan® case, the issues are almost identical to the ones before the Court in this matter.  *In re Darvocet* involved plaintiffs who had ingested the generic version of a drug (propoxyphene, instead of metoclopramide), sustained injuries allegedly caused by the brand-name manufacturers' mislabeling of the drug (cardiac abnormalities rather than tardive dyskinesia), and sought relief from the brand-name manufacturers despite never personally consuming the brand-name product (Darvocet, instead of Reglan®).  Because of the numerous defendants and claims involved in the consolidated action, the case implicated the laws of twenty-two different states.

   At the district level, the court dismissed the plaintiffs' products-liability claims against the brand manufacturers, finding that it was "settled law that the plaintiff must assert that the

defendant's product caused the plaintiff's injury." *Id.* at 936. The plaintiffs did not appeal on that issue. The court also dismissed the plaintiffs' claims against the brand-name defendants for misrepresentation, despite plaintiffs' characterization of those claims as a separate theory of recovery. The court reasoned that, first, the misrepresentation claims were really products liability claims at heart, and, second, even if they were a separate cause of action, the brand-name manufacturers owed no legal duty to plaintiffs who ingested solely generic products. *Id.* at 937. On appeal, the Sixth Circuit affirmed the district court's decision. To reach its conclusion, the Sixth Circuit was required, under *Erie*, to analyze the laws of each implicated state. It did so in a thorough appendix to the opinion, analyzing individually the laws of the twenty-two states. *See id.* at 941-954.

Before turning to the state-by-state analysis, the Sixth Circuit noted that "an overwhelming majority of courts" had previously rejected the plaintiffs' arguments about brand-name drug pharmaceutical companies' liability. *Id.* at 938. The court recognized a handful of minority decisions throughout the country, and, importantly, cited the Alabama Supreme Court's ruling in *Wyeth, Inc. v. Weeks* as one of those minority holdings. *Id.* at 938-39. Though the Sixth Circuit acknowledged the decision, *Wyeth, Inc. v. Weeks* did not ultimately change its opinion on Kentucky law. When the court addressed Kentucky law in its state-by-state analysis, it stated:

> This Court has already determined that claims by consumers of generic drugs against brand manufacturers cannot survive under Kentucky law. *Smith*, 657 F.3d at 424 (affirming judgment for brand defendants' favor on all claims asserted against them). We may not overrule the published decision of a prior panel. *Gilliam v. Mitchell*, 179 F.3d 990, 994 (6th Cir. 1999). Thus, the district court did not err in dismissing Kentucky Plaintiffs' misrepresentation claims against the Brand Manufacturers.

11

*Id.* at 945-46. In the end, the court found that the laws of all twenty-two states were well-settled and that the district court's motion to dismiss was proper. *Id.* at 939.

*In re Darvocet* is applicable to Plaintiff Neeley's case. *In re Darvocet* serves, essentially, as the Sixth Circuit's reaffirmation of *Smith*, a case which informed in large part the Eastern District of Missouri's decision to grant the Brand Defendants summary judgment. This Court is bound by Sixth Circuit precedent, and the Plaintiff has not persuaded the Court that his case is unique or in some way unaffected by the *Smith* and *In re Darvocet* decisions. Interestingly, the Plaintiff never discusses *In re Darvocet* at all, despite the Brand Defendants' lengthy discussion of the case in its response to the motion for reconsideration. [R. 270; *see also* R. 271.] In the absence of any argument to the contrary, the Court agrees with the Brand Defendants that Sixth Circuit precedent suggests Kentucky law is not so unsettled as to warrant certification or reconsideration of the Missouri summary judgment determination.

Finally, Plaintiff Neeley's case is distinguishable from the situation in Alabama that led Judge Fuller to certify a question to the Alabama Supreme Court. In *Weeks v. Wyeth, Inc.*, Judge Fuller described an intrastate split among Alabama federal district courts considering Reglan® cases. 2011 WL 6988047, at *1-2. The Court finds no such split in Kentucky. To the contrary, the Court sees *Smith* and *In re Darvocet* as clarifying Kentucky law for federal courts to follow. Ultimately, the "final arbiter" on matters of Kentucky law is the Kentucky Supreme Court. *See Planned Parenthood of Cincinnati Region v. Strickland*, 531 F.3d 406, 410 (6th Cir. 2008). But where a "reasonably clear and principled course of action exists," the Court need not grant certification. *Hargis*, 785 F.3d at 194; *see also Berrington v. Wal-Mart Stores, Inc.*, 696 F.3d 604, 611 (6th Cir. 2012).

## III

For the foregoing reasons, the Court is not persuaded that a reconsideration of the Eastern District of Missouri's order is warranted under Rule 60(b) or that certification of the Plaintiff's questions to the Kentucky Supreme Court is proper.  Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** that Plaintiff's Motion to Reconsider and to Certify Questions [**R. 265**] is **DENIED**.

This the 15th day of December, 2015.

Gregory F. Van Tatenhove
United States District Judge